**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DAVID OLINEY TAYLOR,
*Defendant-Appellant.*

No. 06-30580

D.C. No.
CR-03-05047-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued May 7, 2008;
Resubmitted May 19, 2008
Seattle, Washington

Filed June 26, 2008

Before: Arthur L. Alarcón, Susan P. Graber, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Alarcón

**COUNSEL**

William C. Broberg, Seattle, Washington, for the defendant-appellant.

Helen J. Brunner and Karyn S. Johnson, Assistant United States Attorneys, Office of the United States Attorney, Seattle, Washington, for the plaintiff-appellee.

**OPINION**

ALARCÓN, Circuit Judge:

David Oliney Taylor pleaded guilty to nine counts of armed bank robbery, and one count of bank robbery, in violation of

18 U.S.C. § 2113. He appeals from the district court's sentencing decision. He contends that the district court erred in concluding that he was previously convicted of two crimes of violence, and consequently in adjusting his advisory sentence upward pursuant to United States Sentencing Commission Guidelines Manual ("USSG") § 4B1.1. He asserts that the district court erred in concluding that his 1986 Arizona state court conviction for attempted armed robbery was a crime of violence under USSG § 4B1.2(a)(1) because the court looked to Arizona intermediate appellate court decisions to determine that Arizona's attempt statute, Arizona Revised Statutes § 13-1001, is coextensive with the federal definition of attempt. He claims that the statute itself establishes that his conviction was not a crime of violence because it demonstrates that Arizona's definition of attempt is broader than the federal definition. *See Appellant's Br.* at 21 ("[T]he Arizona attempt statute's plain language rendered it broad and not coextensive with the federal law of attempt.").

We affirm, because we conclude that the district court properly considered Arizona intermediate appellate court decisions in determining whether Taylor's attempted armed robbery conviction was a categorical crime of violence. We also agree with the district court that the Arizona and federal definitions of attempt are coextensive.

## I

The district court sentenced Taylor to 235 months of imprisonment, five years of supervised release, $33,694 in restitution, and an assessment of $1,000. Taylor appealed from the judgment of conviction and the district court's sentencing decision. We upheld his conviction, but granted a limited remand for resentencing. *See United States v. Taylor*, No. 04-30174, 142 Fed. Appx. 287, 2005 U.S. App. LEXIS 15174, at *5 (9th Cir. 2005) (unpublished disposition) ("Because we cannot determine from the record whether the district court would have imposed a materially different sentence

if it had known the Guidelines were advisory, we grant a 'limited remand.' ").

The presentence report prepared for Taylor's resentencing documented his criminal history. It described two Arizona state court convictions: first, Taylor's May 1, 1986 conviction for attempted armed robbery, and second, his March 5, 1992 conviction for armed robbery.[1] The presentence report concluded that Taylor qualified as a career offender for purposes of USSG § 4B1.1 because he "(1) was at least eighteen years old at the time he committed the instant offense; (2) the instant offense is a felony crime of violence; and (3) he has at least two prior felony convictions of a crime of violence."

During the sentencing proceedings, Taylor argued that his attempted armed robbery conviction was not a crime of violence. ("Our contention is that Arizona's general attempt statute is over inclusive for purposes of defining predicate offenses for the career offender guideline."). The district court followed *United States v. Sarbia*, 367 F.3d 1079 (9th Cir. 2004), and looked to the "applying courts in the state of Arizona" to determine that Arizona's definition of attempt is coextensive with the federal definition. Therefore, it concluded that Taylor qualified as a career offender.

Taylor was resentenced to 235 months of imprisonment, five years of supervised release, $33,694 in restitution, and an assessment of $1,000. Taylor filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2).

## II

We review a district court's interpretation of the USSG, and its determination that a defendant is a career offender, *de*

---

[1]The 1986 conviction was the result of a guilty plea. The 1992 conviction came after a jury verdict.

*novo. United States v. Shumate*, 329 F.3d 1026, 1028 (9th Cir. 2003). We review a district court's application of the USSG to the facts of a case for abuse of discretion. *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006).

**A**

Taylor contends that the district court erred in concluding that Arizona's attempt statute, Arizona Revised Statutes § 13-1001, did not include conduct beyond the federal definition of attempt. He argues that the district court erred by relying on Arizona intermediate appellate court decisions. Taylor maintains that this court's decision in *Sarbia* and the Supreme Court's decision in *James v. United States*, 127 S. Ct. 1586 (2007), provide that we cannot rely on an intermediate appellate court's interpretation of its state's laws unless its highest court has so construed the statute in question. Because Arizona's Supreme Court has not construed section 13-1001, he contends that the district court was required to look only to the unambiguous words of the statute. We disagree.

USSG § 4B1.2(a) defines a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

In determining whether a state crime is a crime of violence, "we use the categorical approach" described in *Taylor v. United States*, 495 U.S. 575 (1990). *United States v. Rendon-*

*Duarte*, 490 F.3d 1142, 1146 (9th Cir. 2007). "Under the categorical approach a court must 'look only to the fact of conviction and the statutory definition of the prior offense' when determining whether the offense qualifies under a definition in the Guidelines." *Id.* (quoting *Taylor*, 495 U.S. at 602).

**[1]** For purposes of USSG § 4B1.2(a), a state offense qualifies as a crime of violence if the state crime's definition is coextensive with the crime's common-law or "federal" definition. *See Sarbia*, 367 F.3d at 1085-86 (comparing Nevada's definition of attempt with the common-law definition). For purposes of determining whether an attempt crime is a crime of violence, we have stated that "[a]t common law an attempt[ ] was defined as the specific intent to engage in criminal conduct and . . . an overt act which is a substantial step towards committing the crime." *Id.* at 1086 (internal quotations omitted).[2]

The Supreme Court has instructed that

> to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic possibility, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case *or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner* for which he argues.

---

[2]We use the terms "federal definition" and "common-law definition" interchangeably in the context of crimes of violence. *See, e.g., Sarbia*, 367 F.3d at 1086.

*Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815, 822 (2007) (emphasis added).

In *Sarbia*, we concluded that, although

> Nevada requires proof that the defendant has performed "some act" rather than a "substantive step" towards the commission of the crime[,] . . . . after reviewing numerous Nevada Supreme Court opinions on the subject, we are persuaded that the terms "some act" or "slight act," as used in the Nevada caselaw, have the same operational meaning as "substantial step," as used in the traditional common-law definition of attempt.

367 F.3d at 1086. Taylor's argument that this court's decision in *Sarbia* did not cite intermediate decisions is misleading. Nevada does not have an intermediate appellate court, so the absence of such citations proves nothing about what cases we should look to in a state that has such a court. Thus, *Sarbia* does not support Taylor's argument that the district court erred by relying on intermediate appellate court decisions.

In *James*, the Supreme Court concluded that a Florida statute criminalized an offense that by its nature presented "a serious potential risk of injury to another"; therefore, the offense qualified as a violent felony for purposes of the Armed Career Criminal Act of 1984. 127 S. Ct. at 1597-98. In determining whether the attempt crime satisfied the violent felony definition, the Court analyzed "what constitutes attempted burglary under Florida law." *Id.* at 1594. It noted that "[o]n its face, Florida's attempt statute requires only that a defendant take 'any act toward the commission' of burglary." *Id.* (quoting Fla. Stat. § 777.04(1)).

The Court looked beyond the text of the Florida statute and considered how Florida's highest court, and its appellate courts, defined attempted burglary. The Court stated that,

"while the statutory language is broad, the Florida Supreme Court has considerably narrowed its application in the context of attempted burglary," and "Florida's lower courts appear to have consistently applied this heightened standard." *Id.* Contrary to Taylor's argument, the Court did not hold in *James* that we may not rely on a state's intermediate appellate courts in determining how a state actually applies an attempt statute. In fact, in *James*, the Court cited two Florida intermediate appellate court decisions, *Richardson v. State*, 922 So. 2d 331, 334 (Fl. Ct. App. 2006), and *Davis v. State*, 741 So. 2d 1213, 1214 (Fl. Dist. Ct. App. 1999), for the proposition that mere preparation is not enough to constitute attempt under Florida law. *James*, 127 S. Ct. at 1594.

**[2]** Taylor has cited no authority, and we are aware of none, that requires a district court to disregard an opinion rendered by an intermediate appellate court that has interpreted state law. Neither the Supreme Court nor any Circuit Court of Appeals has determined whether a district court is precluded from applying the decisions of intermediate state appellate courts in deciding whether a state criminal statute is coextensive with federal law. However, the Supreme Court has held, in a case in which jurisdiction rested on diversity of citizenship, that

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. AT&T*, 311 U.S. 223, 237 (1940). We follow this principle here.

**[3]** We are persuaded that a state intermediate appellate court's holding takes a statute's application from "legal imagination" to "realistic probability." The district court did not err

in relying on Arizona intermediate appellate court opinions. Accordingly, we must consider the question whether, under Arizona caselaw, Taylor's attempted armed robbery conviction was a crime of violence because it is an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 4B1.2(a)(1).

**B**

**[4]** Under Arizona law,

> A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person *threatens or uses force against any person* with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property.

Ariz. Rev. Stat. § 13-1902 (emphasis added).

> A person commits armed robbery if, in the course of committing robbery . . . such person or an accomplice:
>
> 1. Is armed with a deadly weapon or a simulated deadly weapon; or
>
> 2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.

§ 13-1904(A). Armed robbery under Arizona law involves the threat or use of force; therefore, that offense is a crime of violence pursuant to § 4B1.2(a)(1).

**[5]** "[A]n attempt to commit a crime of violence is itself a crime of violence." *United States v. Wenner*, 351 F.3d 969,

976 (9th Cir. 2003) (citing USSG § 4B1.2 cmt. n.1). When the text of an attempt statute deviates from the federal definition of attempt, however, we must look to state caselaw to determine whether the state's definition is coextensive with the federal definition, and therefore qualifies as an attempt for purposes of the USSG. *Sarbia*, 367 F.3d at 1085-86.

**[6]** Arizona's attempt statute provides that a person commits an attempt to commit a crime if he or she "[i]ntentionally does or omits to do anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in commission of an offense." Ariz. Rev. Stat. § 13-1001(A)(2). "At common law an attempt[ ] was defined as the specific intent to engage in criminal conduct and . . . an overt act which is a substantial step towards committing the crime." *Sarbia*, 367 F.3d at 1086 (internal quotations omitted). The wording of the Arizona statute deviates from and is broader than the federal definition; therefore, we must look to Arizona caselaw to determine if section 13-1001(A)(2) is applied in a manner that is contrary to the federal or common-law definition of an attempt.

**[7]** In *State v. Fristoe*, 658 P.2d 825, 830 (Ariz. Ct. App. 1982), the Arizona Court of Appeals held twenty-six years ago that an attempt under Arizona law requires a substantial step, and that "the legislature merely intended to simplify the language of A.R.S. § 13-1001(A)(2) by using 'any step' as opposed to [a] 'substantial step.' " Recently, *Fristoe* was cited for the proposition that " 'any step' [is] equivalent to 'substantial step' " for purposes of [Arizona's] attempt statute." *State v. Johnson*, 111 P.3d 1038, 1040 (Ariz. Ct. App. 2005). No case suggests that the Arizona Supreme Court would decide otherwise.

**[8]** Therefore, based on a review of Arizona's caselaw, it is clear that Arizona's definition of attempt is coextensive with the federal definition. As a result, the district court prop-

erly concluded that Taylor's attempted armed robbery convic-
tion was a crime of violence pursuant to USSG § 4B1.2(a)(1).

**AFFIRMED.**